John P. Sheridan, WSBA #21473
David J. Whedbee, WSBA # 35977
**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

Lowell N. Hawkes (ISB #1852)
Ryan S. Lewis (ISB # 6775)
**LOWELL N. HAWKES, CHARTERED**
1322 East Center Street
Pocatello, Idaho  83201
Telephone:  (208) 235-1600
FAX:  (208) 235-4200
Email:  lnhchartered@yahoo.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JODI STANTON,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br>organized in Delaware<br><br>　　　　　　Defendant. | No.<br><br>COMPLAINT FOR DAMAGES<br>AND DEMAND FOR JURY |

Comes now Plaintiff Jodi Stanton and allege as follows:

**I.     NATURE OF THE ACTION**

Defendant Battelle Energy Alliance, LLC ("Battelle" or "BEA"), a Delaware corporation, operates the Idaho National Laboratory (INL), in Idaho Falls, Idaho, under contract with the U.S. Department of Energy (DOE).  On November 8, 2011, workers at the INL's Materials and Fuels Complex (MFC) Zero Power Physics Reactor (ZPPR) Facility, were packaging plutonium (Pu) reactor fuel plates.  On instruction by INL supervisors and managers, one of the workers, Ralph

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 1

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

('xxxxx.x hf091401

Stanton, opened two fuel storage containers that had unusual labels indicating potential abnormalities with the fuel plates located inside. When he did, an uncontrolled release of radioactive contaminants occurred, resulting in the contamination of 16 workers and the facility, including Mr. Stanton [hereinafter "the Incident"].

Defendant allowed Ralph Stanton to leave the ZPPR facility without adequately decontaminating him and without accurately measuring the plutonium, americium, and other potential contaminants to which Mr. Stanton was exposed. Since the exposure, the Stantons, including Plaintiff Jodi Stanton have questioned Defendant's official account of the nature and extent of the contamination, including the on-going public representation that no contamination from the November 8, 2011 occurred beyond the ZPPR Facility.

Mr. Stanton and others endeavored on their own to ascertain accurate dosimeter readings for Mr. Stanton at the time of the Incident, and afterward relating to contamination of their home in Idaho Falls. In response, Battelle has engaged in a pattern of delay, obfuscation, and misrepresentation about the nature and extent of the contamination. Battelle has done so despite the Stanton's discovery that their home was contaminated as a result of the November 8, 2011 incident. Defendant's intentional and/or negligent conduct in denying the existence of contamination and failure to undertake comprehensive testing has caused Plaintiff severe emotion distress, along with migraines, sleeplessness, and other physical manifestations of harm.

## II.     PARTIES

2.1     Plaintiff Jodi Simmons is a citizen of Idaho and a resident of the District of Idaho.

2.2     Defendant Battelle Energy Alliance, LLC, is a company organized in Delaware that operates the Idaho National Laboratory in Idaho Falls, Idaho.

## III.     JURISDICTION AND VENUE

3.1     The Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff is a citizen of Idaho, and Defendant is a citizen of Delaware. Plaintiff' damages exceed the $75,000 amount-in-controversy requirement.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 2

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

('xxxxx.x hf091401

3.2     Venue is appropriate in the District of Idaho because the events complained of occurred in this District. 28 U.S.C. § 1391.

## IV.     FACTS

4.1     *The November 8, 2011 Release of Radioactive Contaminants at the ZPPR Facility.*

4.1.1     Plaintiff Jodi Stanton is the spouse of Ralph Stanton, who was working as a nuclear operator at the Idaho National Laboratory (INL) at all material times. Mr. Stanton was employed by Battelle Energy Alliance, LLC ("Battelle" or "BEA"), which is the current day-to-day operator of the INL facility, including the Materials and Fuels Complex (MFC) and the Zero Power Physics Reactor (ZPPR) Facility. In 2005, the DOE transferred to Battelle the management and operation of these facilities.

4.1.2     The ZPPR Facility is located within the MFC. It has a Vault for nuclear material, equipment and facilities for handling surveillance and inspection, and a Workroom for packaging and processing when nuclear material is received or to be shipped.

4.1.3     On November 8, 2011, INL workers (including Ralph Stanton) discovered several "clamshell" containers with plutonium (Pu) reactor fuel plates at the MFC/ZPPR facility. As later described by the DOE, two of the "containers had atypical labels indicating potential abnormalities with the fuel plates located inside." Specifically, the labels read: "CAUTION: RADIOACTIVE MATERIAL" and that Clamshell 47 contained: "1-Plate Dented/1-Plate C $\leq 10$ d/m/plate $\alpha$ & is wrapped in plastic."

4.1.4     The INL nuclear operators consulted the Shift Supervisor, who in turn consulted with the Nuclear Facility Manager. The supervisors instructed the workers that the packaging operation should proceed. INL operators took four of the "clam shell" containers into the ZPPR Workroom and discovered one of the Pu fuel plates wrapped in plastic and tape. The workers attempted to remove the plastic wrapping material by cutting into it and precipitated an uncontrolled release of plutonium, resulting in the contamination of 16 workers and the facility, including Brian Simmons and Ralph Stanton.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 3

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

('xxxxx.x hf091401

4.1.5   At the time of the release, BEA Health Physicist, Steve Braase attempted to get a radiation reading of Mr. Stanton using a hand-held alpha-radiation detector.  He later reported the detector usually must be placed within a quarter inch from the subject to detect radiation, but in this case, "as far as three inches from the swab, the needle bounced into the red."  Mr. Braase stopped work and measured Mr. Stanton for alpha radiation.  Mr. Braase later reported that he "shocked" to find alpha radiation on Mr. Stanton's shoulder.

4.1.6   Mr. Braase had Mr. Stanton removed his gauntlets and gloves, sealing his hands inside a plastic bag.

4.1.7   Meanwhile, an air monitor alarm sounded, cueing the operators to evacuate because of airborne contamination.

4.1.8   Mr. Stanton, Mr. Braase, and others were taken through a series of security stations and surveyed for radiological contamination.  INL measured Mr. Stanton's radiation exposure by taking nasal swabs, a lung count and urine and fecal bioassay samples.  The decontamination team also found contamination in Mr. Braase's hair and "all over his face."

4.1.9   Contrary to standard practices, BEA did not have Mr. Stanton shower before performing the lung count, or indeed at any time before he was allowed to leave the ZPPR Facility and go home.  BEA agents required only that Mr. Stanton be wiped down, a process BEA agents directed.

4.1.10  The lung count taken on November 8, 2011 indicated considerable exposure to alpha radiation particulate, including a count of amerium-241 "above the decision level."  Mr. Stanton, and the Plaintiff, worried the high americium count stems from the fact that he inhaled radioactive contaminants at the moment of the plutonium release.  BEA decided not to use this reading, discounting the results allegedly because BEA believed that the count stemmed from the fact that Mr. Stanton had not showered.

4.1.11  As to the urine and fecal samples of the most contaminated workers, they were sent to a lab, but, according to a later DOE Report, BEA health physicists miscommunicated

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 4

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

('xxxxx.x hf091401

with the lab. As a result, these samples were thrown out, samples Mr. Stanton and Plaintiff believe would have shown the highest doses of plutonium and americium.

  4.2 ***The DOE'S Accident Investigation Report.***

  4.2.1 On January 4, 2012, the DOE's Office of Nuclear Energy issued an "Accident Investigative Report" ("Report") of the November 8, 2011 plutonium release. It concluded that the release was "preventable" and determined that Battelle bore responsibility for various root causes of the contamination.

  4.2.2 The "local root causes" included: (1) "BEA did not accurately analyze the Pu hazard in the safety basis and establish commensurate controls"; and (2) "The management system lacked requirements intended to influence the decision making of the NFM and SS, resulting in a single-point decision to cut the wrapping."

  4.2.3 The "systemic root causes" included: (1) "DOE-ID accepted the risk of known safety basis deficiencies and allowed continued operation of the ZPPR Facility within the framework of a multi-year safety basis upgrade plan without putting effective interim controls in place"; and (2) "BEA continued operation of the ZPPR Facility with known safety basis deficiencies and without adequately analyzing the hazard to the worker or establishing effective work control processes."

  4.2.4 The Report also found, as a contributing cause, that on May 30, 2003, before the DOE subcontracted the operation and management of the MFC to Battelle, an Associate Laboratory Director had issued a report entitled "Fissile Material Control Noncompliances of ZPPR." This report noted that one root cause of the "noncompliances" pertained to "management deficiencies," including more specifically "concerns with the lack of Pu-specific training and surveillance." The Report further found that when, by January 14, 2005, the MFC was transitioned from DOE-ID to Battelle, the Associate Laboratory Director made several recommendations relevant to the November 8, 2011 contamination. These included:

> (1) Battelle and DOE failed to improve a safety basis upgrade plan, which resulted in misjudging both the likelihood and the potential severity of the type of radioactive contamination that occurred on November 8, 2011.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 5

M<small>AC</small>D<small>ONALD</small> H<small>OAGUE</small> & B<small>AYLESS</small>
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

('xxxxx.x hf091401

(2) Battelle miscalculated the potential radioactive dose ZPPR workers could receive in the event of such a release of radioactivity.

(3) (3) In DOE reports entitled *Transmittal of the INL Transition Report on Nuclear Facilities Safety Bases* (1/11/2005), and *Independent Safety Review Committee (IRSC) for the Materials and Fuels Complex (MFC)*, and a white paper (1/26/2009) and report (6/23/2011) by the IRSC Chairman, the DOE expressed historical and on-going concerns about the storage of plutonium fuel plates at the ZPPR facility.

4.2.5   The DOE Report concluded: "The treatment of a failed Pu fuel plate hazard and potential accident in BEA's safety basis is of supreme relevance to this accident investigation, because it ultimately resulted in the lack of additional controls that could have prevented the accident on November 8, 2011."

4.2.6   The DOE Report criticized BEA for the inadequate continuous air monitoring system at ZPPR, failing to train its employees to respond in the event of an uncontrolled airborne contamination, and for the deficient emergency response to the November 8, 2011 itself, including the insufficient hot water supply needed to shower the contaminated workers.

4.3   ***Stanton's Attempts to Learn the Nature and Extent of the November 8, 2011 Contamination.***

4.3.1   On March 27, 2012, Mr. Stanton requested his medical and exposure records. BEA did not provide the records, claiming that the dosage levels were unknown.

4.3.2   Mr. Stanton had Marco Kaltofen, MS, PE, test samples taken from Plaintiff's home to determine whether or not there was plutonium and americium contamination present.

4.3.3    In a letter dated June 11, 2012, Jacquenlyn Collins of Pace Analytical Services, Inc., wrote to Marco Kalofen to inform him of potential contamination found in samples taken from the Stanton home.

4.3.4   On June 18, 2012, Mr. Stanton and Simmons, through counsel, repeated the request for all medical and dosage records to BEA General Counsel, Linda Guinn-Montgomery. The on-going concern arose from BEA's attempt to remove the radiation restriction from Mr. Stanton amid BEA's continued claim that the exact dosages were unknown though others claimed their exposure was "horrendous."

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 6

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

('xxxxx.x hf091401)

4.3.5   In this same correspondence, Mr. Stanton's counsel conveyed to Ms. Guinn-Montgomery that Mr. Stanton's then-supervisor, Eric Papaioannou, was pressuring Mr. Stanton to return to work on an assignment that entailed exposure to higher levels of radiation, even though BEA had not stated what the extent of November 8, 2011 radiation contamination. Counsel wrote that BEA, through Mr. Papaioannou, "characterized [Stanton's] internal plutonium exposures to a mental hangup rather than biological fact of continuing injury. He also told them an internal dose was no different than an external dose and that their risk of cancer was less than average despite their November 8th exposures. That raises the concern as to whether Mr. Papaioannou is intentionally providing false information on his own or at the direction of others or is just not sufficiently knowledgeable or trained as to Plutonium characteristics."

4.3.6   On July 12, 2012, Mr. Stanton's counsel emailed Ms. Montgomery, stating that five weeks had passed since the contact with Mr. Breidenbach to follow up on the original March 27, 2012 request for medical and dosage records. Stanton's counsel wrote: "The ensuing delay is of the type that experience has shown me to be a result of intentional frustration and delay as well as alteration of records. Certainly some portion of documents could have been furnished our office immediately and the personnel file documents could have been copied and sent out in a day or two."

4.3.7   In the summer of 2012, Mr. Stanton and Plaintiff learned the results of outside testing of their home that it could have contamination traceable to the November 2011 incident.

4.3.8   On September 24, 2012, BEA finally released the dose reports for Simmons and Stanton. Mr. Stanton was incredulous about the dose reports because, among other reasons, they didn't incorporate the initial lung count BEA discarded, and the lab testing the urine and fecal samples disposed of the initial samples due to BEA's miscommunications. When receiving the reports, BEA insisted that they sign for them. Simmons and Stanton refused to do so for fear they might be signing rights away. In retaliation, the "Rad-Con" manager, Paul Nelson, threatened to take away the workers' Radiation Worker I and II Qualifications.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 7

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

('xxxxx.x hf091401

4.3.9   Defendant had a duty to Plaintiff to avoid unreasonable risks of exposure or concern of exposure to radiological contamination. It was foreseeable to Defendant that Plaintiff would be concerned about potential radiological contamination in her home and that she would expect, and was entitled to, accurate, timely, and complete information about the nature and extent of radiological contamination.

4.3.10   Defendant breached its duty to Plaintiff by failing to provide accurate, timely, and complete information about the nature and extent of radiological contamination.

4.3.11   Defendant's intentional and/or negligent conduct in denying the existence of contamination and failure to undertake comprehensive testing caused Plaintiff severe emotional distress, along with migraines, sleeplessness, rashes, and other physical manifestations of harm.

### V.   CAUSE OF ACTION

5.1   Incorporating the foregoing allegations herein, Defendant negligently or intentionally inflicted emotional distress on Plaintiff.

### VI.   DEMAND FOR JURY

6.1   Plaintiff demands a trial by jury on all issues if this Complaint is contested.

### VII.   CLAIMS FOR RELIEF

WHEREFORE, the Plaintiff requests relief as follows:

7.1   Compensatory damages;

7.2   Such other relief as may be just and equitable.

DATED this 10th day of June, 2014.

MacDONALD HOAGUE & BAYLESS

By: /s John P. Sheridan
John P. Sheridan, WSBA #21473
jacks@mhb.com

/s  David J. Whedbee
David J. Whedbee, WSBA # 35977
davidw@mhb.com

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 8

MacDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

('xxxxx.x hf091401

1
2
3      Lowell N. HAWKES, CHARTERED
4
5      By: /s Lowell N. Hawkes
           Lowell N. Hawkes, ISB #1852
6          lnhchartered@yahoo.com

7          /s_Ryan S. Lewis
           Ryan S. Lewis, ISB # 6775
8          lnhchartered@yahoo.com

9      Attorneys for Plaintiff
10
11
12
13
14
15
16
17
18
19
20
21
22
23

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY - 9

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

('xxxxx.x hf091401)