UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JODI STANTON,<br><br>                Plaintiff,<br><br>   v.<br><br>BATTELLE ENERGY ALLIANCE, LLC., organized in Deleware,<br><br>                Defendant. | Case No. 4:14-CV-00231-EJL-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court in the above-entitled matter is Defendant's Motion to Dismiss. The parties have filed their responsive briefing and the matter is ripe for the Court's consideration. Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

**MEMORANDUM DECISION AND ORDER - 1**

# FACTUAL AND PROCEDURAL BACKGROUND

Defendant Battelle Energy Alliance, LLC (Battelle) has been the day-to-day operator of the Idaho National Laboratory (INL) facility since 2005. Battelle employed Ralph Stanton as a nuclear operator at the INL's Materials and Fuels Complex (MFC) in the Zero Power Physics Reactor (ZPPR).[1] Plaintiff Jodi Stanton is the spouse of Ralph Stanton.

The facts underlying the claim in this case involve a release of radioactive contaminants on November 8, 2011 at the ZPPR. On that day, Mr. Stanton and others were packaging plutonium reactor fuel plates in the ZPPR. Mr. Stanton was instructed by his supervisors and managers to open two fuel storage containers that had unusual labels which indicated there were potential abnormalities with the fuel plates located inside the packaging. Upon opening the containers, radioactive contaminates, plutonium and americium, were released resulting in the contamination of sixteen workers at the facility including Mr. Stanton.[2]

Battelle's Health Physicist, Steve Braase, used a hand-held alpha-radiation detector to take radiation readings of Mr. Stanton which detected radiation on his person. Mr. Stanton was told to remove his gauntlets and gloves and his hands were sealed in a plastic bag. He was then taken through a series of security stations and surveyed for radiological

---

[1] The ZPPR facility is located within the MFC at INL that contains a vault for nuclear material and equipment, a facility for handling surveillance and inspection, and a workroom for packaging and processing nuclear materials that is received or to be shipped. (Dkt. 1 at ¶ 4.1.2.)

[2] Plutonium and americium are transuranic radioactive chemical elements.

contamination. Several measurements for radiation exposure were taken including nasal swabs, a lung count, and urine and fecal bioassay samples. Mr. Stanton was then allowed to leave after having only been "wiped down," not showered. Some of the exposure test samples taken following the release were later destroyed and, Mrs. Stanton alleges, Battelle denied the exposure and generally delayed, withheld, and/or misrepresented the level of exposure to radiation that resulted from the November 8, 2011 release.

Mrs. Stanton has brought this action against her husband's employer, Battelle, raising a cause of action for negligent or intentional infliction of emotional distress. (Dkt. 1.) The allegations giving rise to the claim are that 1) Battelle allowed Mr. Stanton to leave the ZPPR facility without adequately decontaminating him and without accurately measuring the plutonium, americium, and other potential contaminants to which he was exposed and 2) Battelle failed to undertake comprehensive testing for radiation exposure and delayed, misrepresented, and denied the existence of any contamination. These acts, Mrs. Stanton alleged, caused her severe emotional distress because she feared the risk of radioactive contamination from Mr. Stanton's exposure on November 8, 2011. Battelle has filed the instant Motion to Dismiss which the Court takes up in this Order.

## STANDARD OF REVIEW

A motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Federal Rule of Civil Procedure 8(a) sets forth minimum pleading rules, requiring

**MEMORANDUM DECISION AND ORDER - 3**

only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

## DISCUSSION

Battelle argues the Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because Mrs. Stanton has failed to plead a viable claim for either negligent or intentional emotional distress. (Dkt. 6.) Specifically, Battelle contends it does not owe a legal duty to Mrs. Stanton and the allegations are insufficient to show Mrs. Stanton has suffered a compensable emotional injury. Mrs. Stanton responds that the Complaint has

stated proper claims for damages and, alternatively, that the Court should grant her leave to amend the Complaint if necessary.

**1.      Negligent Infliction of Emotional Distress**

The tort of negligence includes a claim for negligent infliction of emotional distress which requires the same elements as a common law negligence action. *See Nation v. State Dep't of Correction*, 158 P.3d 953, 965–66 (Idaho 2007); *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 804 P.2d 900, 904–06 (Idaho 1991); *Brown v. Matthews Mortuary, Inc.*, 801 P.2d 37, 44 (Idaho 1990). The elements for this claim are: (1) a duty recognized by law requiring the defendant to conform to a certain standard of conduct; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual loss or damage. *Johnson v. McPhee*, 210 P.3d 563, 574 (Idaho Ct. App. 2009) (citing *Brooks v. Logan*, 903 P.2d 73, 78 (Idaho 1995)). Negligent infliction of emotional distress also requires there to be some physical manifestation of the plaintiff's emotional injury. *Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613, 624 (Idaho 2013); *Sommer v. Elmore Cnty.*, 903 F.Supp.2d 1067, 1075 (D. Idaho 2012).

**A.      Duty**

Battelle argues it had no duty to Mrs. Stanton to protect her from fear of second-hand radiation exposure from her spouse. (Dkt. 6, 16.) Mrs. Stanton counters that Battelle owed her a duty to exercise ordinary care to prevent unreasonable, foreseeable risks of harm to others. (Dkt. 11 at 6.) Moreover, Mrs. Stanton argues her risk of harm in this case was reasonably foreseeable given Battelle should have known she would be exposed to radiation

when her husband came home following the November 8, 2011 release. Battelle counters that the potential harm in this case was not sufficiently foreseeable to give rise to a duty. (Dkt. 16 at 4.)

"Every person, in the conduct of his business, has a duty to exercise ordinary care to 'prevent unreasonable, foreseeable risks of harm to others.'" *Braese v. Stinker Stores, Inc.*, 337 P.3d 602, 604 (Idaho 2014) (quoting *Turpen v. Granieri*, 985 P.2d 669, 672 (Idaho 1999)) (citations omitted). Stated differently, "one owes a duty to every person in our society to use reasonable care to avoid injury to the other person in any situation in which it could be reasonably anticipated or foreseen that a failure to use such care might result in such injury." *Doe v. Garcia*, 961 P.2d 1181, 1184 (Idaho 1998). In determining whether a duty is owed in a particular context, Idaho courts employ the "balancing of the harm" analysis. *Beers v. Corporation of Pres. of Church of Jesus Christ of Latter-Day Saints*, 316 P.3d 92, 97 (Idaho 2013) (citing *Doe*, *supra*). This analysis considers policy and weighs several factors including:

> [T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved (citations omitted).

*Beers*, 316 P.3d at 98 (quoting *Rife v. Long*, 908 P.2d 143, 148 (Idaho 1996).

**MEMORANDUM DECISION AND ORDER - 6**

In support of its Motion, Battelle points to *Zaleha v. Rosholt, Robertson & Tucker, Chtd.*, 953 P.2d 1363, 1364 (Idaho 1998) where the Idaho Supreme Court dismissed a spouse's claim for negligent infliction of emotional distress brought against her husband's employer holding that the employer did not owe a duty to the spouse of an employee who was terminated. (Dkt. 6 at 6-8). In that case, the plaintiff claimed the defendant's actions against her spouse caused her emotional distress. The court considered the *Rife* factors in determining that the defendant's conduct and any injury suffered by the plaintiff was too tenuous of a connection to give rise to a duty on the part of the defendants. *Id.* 953 P.2d at 1365.

Mrs. Stanton argues the *Zaleha* case is distinguishable because the facts in that case related to actions taken by the defendants against its own employee whereas here, Mrs. Stanton maintains her claim is based on allegations that Battelle's conduct directly affected her. (Dkt. 11 at 11.) In particular, that Battelle directly exposed her to radiation when it allowed her husband to return home following the November 8, 2011 release without adequately measuring his radiation exposure or requiring proper decontamination and then negligently performing its investigation. (Dkt. 11 at 11.) Taking Mrs. Stanton's allegations as true, the Court finds that the principles and analysis used in *Zaleha* apply here. *Zaleha*, 953 P.2d at 1365 (recognizing that the *Rife* factors are the appropriate analysis where the court must consider extending the duty of care); *see also Turpen*, 985 P.2d at 673.

In this case, Mrs. Stanton's claim alleges Battelle owed her a duty to act with ordinary care with respect to specific acts done in response to the November 8, 2011 release. (Dkt. 11

**MEMORANDUM DECISION AND ORDER - 7**

at 8.) The specific acts identified by Mrs. Stanton are that Battelle failed to exercise ordinary care in its investigation of and response to the release. (Dkt. 11 at 9.) In particular, that Battelle: 1) allowed Mr. Stanton to leave work following the release without adequately measuring the contaminants to which he was exposed and without requiring proper decontamination and 2) failed to properly investigate and either withholding/skewing or failing to provide full and accurate information about the nature and extent of the contamination risk. (Dkt. 11 at 8-12.) Because these allegations can be interpreted as a negligence claim of either misfeasance or nonfeasance, the Court will address both below.[3]

To the extent Mrs. Stanton's claim is that Battelle's actions in its immediate response to and subsequent investigation of the release were outside the requisite ordinary standard of care, a misfeasance claim, the Court finds Battelle did not owe a duty to Mrs. Stanton under the balancing of the harm analysis. In considering the first *Rife* factor of foreseeability, the Idaho Supreme Court has stated:

> Foreseeability is a flexible concept which varies with the circumstances of each case. Where the degree of result or harm is great, but preventing it is not difficult, a relatively low degree of foreseeability is required. Conversely, where the threatened injury is minor but the burden of preventing such injury is high, a higher degree of foreseeability may be required. Thus, foreseeability

---

[3] A misfeasance claim involves active misconduct causing an injury to another whereas a nonfeasance claim alleges the failure by one to act when a duty existed. *See* Black's Law Dictionary, 9th Ed. at 1042, 1153. In this case, Battelle labels Mrs. Stanton's claims as ones for nonfeasance. (Dkt. 16 at 4.) In her response, however, Mrs. Stanton states that she has not alleged that Battelle had an affirmative duty to protect her from the effects of cumulative secondhand exposure. Instead, Mrs. Stanton's arguments appear to raise misfeasance claims asserting that Battelle's actions in response to and investigation of the incident on November 8, 2011 are what give rise to the claim. (Dkt. 11 at 10.)

**MEMORANDUM DECISION AND ORDER - 8**

is not to be measured by just what is more probable than not, but also includes whatever result is likely enough in the setting of modern life that a reasonably prudent person would take such into account in guiding reasonable conduct.

*Turpen*, 985 P.2d at 673 (quoting *Sharp v. W.H. Moore, Inc.*, 796 P.2d 506, 509-10 (Idaho 1990) (citations omitted)). "[F]oreseeability relates to the general risk of harm rather than 'the specific mechanism of injury.'" *Id.* Foreseeability is generally a question of fact for the jury to decide but may be ruled upon by the court as a matter of law when the undisputed facts lead to only one reasonable conclusion. *See Stoddart v. Pocatello School Dist. #25*, 239 P.3d 784, 791 (Idaho 2010) (citing cases).

Here, Mrs. Stanton argues it was foreseeable to her husband's employer that its actions relating to the November 8, 2011 release would result in its employee's spouse suffering emotional distress from her fear of second-hand radiation exposure from her husband. At this stage, the Court finds that Mrs. Stanton has stated a plausible claim that her alleged injury was foreseeable to Battelle. The Court makes no finding, however, as to whether foreseeability would be established on a later motion or at trial.

Taking as true Mrs. Stanton's risk/fear of potential radiation exposure was foreseeable, the Court finds, however, that the policy considerations and other *Rife* factors do not weigh in favor of finding Battelle owed a duty to Mrs. Stanton. In particular, the Court finds the factors of the degree of certainty that the plaintiff suffered injury and the closeness of the connection between Battelle's conduct and the injury alleged do not weigh in favor of Mrs. Stanton. The injury alleged is emotional distress resulting from the fear of radiation

exposure. Mrs. Stanton maintains the allegations are based on conduct by Battelle towards her directly. Taking those allegations as true, the fact remains that the degree of certainty and closeness of connection in this case lack the characteristics that would give rise to a duty. Mrs. Stanton is once removed from the circumstances and actions giving rise to her claim, i.e. Battelle's conduct with regard to the November 8, 2011 release. The alleged injury arises from Mrs. Stanton's reaction to the event and her fear of potential risk of exposure which, again, do not possess the kind of closeness or certainty that would give rise to a duty. To impose a duty upon Battelle under these circumstances would expand the concept of foreseeability too far so as to swallow up the other factors. Finding that duty exists in this situation would require a greater degree of certainty and/or connection between Battelle's conduct and Mrs. Stanton's alleged injury.

To the extent Mrs. Stanton's claim is based on allegations that Battelle had a duty to affirmatively act to prevent harm to her, a nonfeasance claim, the Court finds such a claim also fails. There is no affirmative duty of care to prevent harm to another absent a special relationship or an assumed duty. *Beers*, 316 P.3d at 98 (quoting *Coghlan v. Beta Theta Pi Fraternity*, 987 P.2d 300, 311 (Idaho 1999) ("[t]here is ordinarily no affirmative duty to act to assist or protect another absent unusual circumstances, which justify imposing such an affirmative responsibility.). Thus, this inquiry turns on whether Battelle owed a duty to Mrs. Stanton based on a special relationship or assumed duty. Neither side has argued that Battelle assumed a duty so the Court will analyze only the parties' arguments as to whether a special relationship exists.

**MEMORANDUM DECISION AND ORDER - 10**

"A special relationship can have two separate but related aspects. The Restatement (Second) of Torts states that '(a) a special relation exists between the actor and a third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives the other a right to protection.'" *Beers*, 316 P.3d at 98 (quoting *Turpen*, 985 P.2d at 673). "Thus, having control over someone or a duty to protect that person is indicative of a special relationship." *Id.*

The Idaho Supreme Court has listed examples of individuals having a duty to control another such as: "a parent's duty to control his child, an employer's duty to control an employee while at work, or a law enforcement officer's duty to control a dangerous prisoner." *Beer*, 316 P.3d at 98 (citing cases). The "common element in each of these is knowledge of an unreasonable risk of harm and the right and ability to control the third party's conduct," leading the court to conclude that "a special relationship imposing a duty to control another's conduct requires a foreseeable risk and the right and ability to control that person's conduct." *Id.* "Determining whether a special relationship exists that gives a person the right to protection requires an evaluation of the sum total of those considerations of policy which lead the law to say that a particular plaintiff is entitled to protection." *Id.* (quoting *Rees*, 137 P.3d at 402 and *Coghlan*, 987 P.2d at 311 (quotation marks omitted)).

Under this analysis, the Court finds there is no special relationship between Battelle and Mrs. Stanton in this case. Regardless of the foreseeability of the risk, there are no facts alleged which show Battelle had any right or ability to control Mrs. Stanton's conduct. As

such, the Court finds the Complaint has failed to state a plausible claim that any duty is owed by Battelle to Mrs. Stanton due to any special relationship.

Battelle likens this case to the asbestos second-hand/take-home exposure cases where no duty was found to have extended to spouses of the employees who were exposed to asbestos. (Dkt. 6 at 3-5) (Dkt. 16 at 3-4.) In those cases, the courts did not extend a duty to the spouses of exposed employees. *See e.g. Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162 (Del. Supr. 2011); *Riedel v. ICI Americans Inc.*, 968 A.2d 17, 25-26 (Del. Supr. 2009. Mrs. Stanton disagrees and argues the asbestos cases are distinct from the facts here in that they involved long-term exposure to asbestos whereas the facts in this case involve Battelle's conduct in response to the November 8, 2011 release. (Dkt. 11 at 8-11.)

While the asbestos cases are not identical, they are similar and the Court finds their reasoning to be instructive. The distinction from the asbestos cases made by Mrs. Stanton may help define her claim in this case as being one made based on Battelle's wrongful actions, as opposed to the failure to act. Regardless of whether Mrs. Stanton's allegations give rise to a misfeasance or nonfeasance negligence claim, the out come remains the same. The allegations in the complaint fail to state a plausible claim for negligent infliction of emotional distress because there is no duty owed to Mrs. Stanton. Because no duty exists, the Court will grant the Motion to Dismiss as to the negligent infliction of emotional distress claim.

B.  **Injury**

Battelle also argues the claim fails because the Complaint has not alleged sufficient facts to demonstrate that Mrs. Stanton has suffered a compensable emotional injury. (Dkt. 6 at 8-9.) Because the allegations raise only a fear of "potential exposure" and an injury stemming from Ms. Stanton's fear of actual exposure, Battelle argues the Complaint fails to allege a viable negligent infliction of emotional distress claim. Mrs. Stanton maintains she has plead sufficient facts to support the claim of actual exposure. (Dkt. 11 at 12-18.) The parties both dispute the application and implications of the reports and opinions generated in regards to the November 2011 release including the "Pace Report," the "INL Concentrations Report," and Declaration of Dr. Jan Beyea.[4]

In considering a claim for recovery for emotional distress resulting from fear of contracting a sexually transmitted disease, the Idaho Supreme Court has stated:

> Damages are recoverable for emotional distress claims resulting from the present fear of developing a future disease only if the mental injury alleged is shown to be sufficiently genuine and the fear reasonable. We hold that there can be no reasonable fear of contracting such a disease absent proof of actual exposure.

*Neal v. Neal*, 873 P.2d 871, 876 (Idaho 1994) (citations omitted). In *Neal*, because there was

---

[4] The parties also dispute whether these materials should be considered by the Court on this Motion. The Court has reviewed the parties' arguments in this regard and notes that the arguments raised concerning these materials are more akin to those raised on summary judgment. Because leave to amend is granted in this case, the Court makes no ruling at this time concerning the parties' request for judicial notice and that the Motion to Dismiss be converted to a Motion for Summary Judgment.

**MEMORANDUM DECISION AND ORDER - 13**

no actual exposure to any sexually transmitted disease, the court concluded the plaintiff had not satisfied "the requirement of a reasonable fear to recover for emotional distress." *Id.*

The allegations in the Complaint in this case include that Mr. Stanton was exposed to radiation, Mr. Stanton was not properly decontaminated before returning home, and that outside testing of the Stanton home shows it could have contamination traceable to the November 2011 incident. (Dkt. 1 at ¶¶ 4.1.5, 4.1.8, 4.2.6, 4.3.7.) There are not, however, any allegations concerning Mrs. Stanton's actual exposure. While it may go without saying that Mrs. Stanton was exposed because she shared a home with Mr. Stanton, that factual connection should not go left unsaid in order to state a plausible claim for relief. The Complaint does state that Mrs. Stanton is the spouse of Mr. Stanton and that "Mr. Stanton and Plaintiff learned the results of outside testing of *their home*" and that it was "foreseeable to Defendant that Plaintiff would be concerned about potential radiological contamination in *her home* and that she would expect, and was entitled to, accurate, timely, and complete information about the nature and extent of radiological contamination." (Dkt. 1 at ¶¶ 4.1.1, 4.3.7, 4.3.9.)[5] While these are facts from which one could draw the inference of actual exposure to Mrs. Stanton, the Court concludes that the conclusory allegations in the Complaint do not state a plausible claim for relief as to the injury alleged – Mrs. Stanton's actual exposure.

---

[5] The unnumbered introductory paragraphs in the Complaint also refer to "*their home*." (Dkt. 1 at 2.) A later paragraph refers to "test samples taken from Plaintiff's home...." (Dkt. 1 at ¶ 4.3.2.)

Battelle further argues that the Complaint fails to allege that Mrs. Stanton's fear of future illness from actual exposure was reasonably objective. (Dkt. 6 at 10-11) (Dkt. 16 at 4-5.) Mrs. Stanton counters that the Declaration of Dr. Beyea substantiates the sufficiency of the allegations given the context of the exposure was to plutonium. (Dkt. 11 at 17.) Dr. Beyea's conclusions, however, are not part of the pleadings. Battelle disputes Dr. Beyea's conclusions and points to other materials that are likewise not part of the pleadings. In general, these arguments by the parties appear to go to the substance of the claims – i.e. whether there is evidence of the alleged injury. The question on this Motion, however, is whether the allegations in the Complaint state a plausible claim for negligent infliction of emotional distress. It is not necessary for Mrs. Stanton to prove the existence of an actual injury in order to over come a motion to dismiss. At this stage, Mrs. Stanton need only allege facts sufficient to show a plausible claim for a recoverable injury. The Complaint does not do so in this case.

For the reasons stated above, the Court finds the Complaint has not sufficiently alleged a plausible claim for a recoverable injury as to the negligent infliction of emotional distress claim. The Motion to Dismiss is granted as to this claim.

### 2. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress in Idaho requires the following elements: (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) that there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) that the plaintiff's emotional

**MEMORANDUM DECISION AND ORDER - 15**

distress was severe. *See Hopper v. Swinnerton*, 317 P.3d 698, 708 (Idaho 2013); *Alderson v. Bonner*, 132 P.3d 1261, 1267 (Idaho Ct. App. 2006). "Liability for this intentional tort is generated only by conduct that is very extreme. The conduct must be not merely unjustifiable; it must rise to the level of atrocious and beyond all possible bounds of decency, such that it would cause an average member of the community to believe that it was outrageous." *McPhee*, 210 P.3d at 572 (citing *Edmondson v. Shearer Lumber Prods.*, 75 P.3d 733, 741 (Idaho 2003) (marks omitted)).

A defendant's conduct must be "atrocious and beyond all possible bounds of decency [such] that it would cause an average member of the community to believe it was outrageous." *Edmondson*, 75 F.3d at 740–41. Intensity and duration of the distress are also factors to be considered in determining whether the plaintiff's emotional distress was severe. *Alderson*, 132 P.3d at 1269. "To recover damages for emotional distress, Idaho law clearly requires that emotional distress be accompanied by physical injury or physical manifestations of injury.'" *Hopper*, 317 P.3d at 707 (quoting *Brown*, 801 P.2d at 42).

On this claim, Mrs. Stanton argues that Battelle deliberately attempted to conceal the consequences of the November 8, 2011 release of radiation, including the nature and consequences for her own exposure, and failed to follow proper decontamination procedures. (Dkt. 11 at 19-20.) Mrs. Stanton contends the allegations are sufficient to state a plausible claim of sufficiently extreme and outrageous conduct to overcome the Motion to Dismiss. Battelle argues the claim should be dismissed because it fails to allege sufficient facts to show that Mrs. Stanton suffered a compensable form of sever emotional distress and/or the

**MEMORANDUM DECISION AND ORDER - 16**

allegations do not show extreme and outrageous conduct by Battelle. (Dkt. 6 at 12.)

The Complaint alleges generally that Battelle failed to adequately decontaminate Mr. Stanton and accurately measure his contaminant exposure before allowing him to leave the facility following the November 8, 2011 release. (Dkt. 1 at 2 and ¶¶ 4.1.9, 4.1.10, 4.2.6.) The allegations in the Complaint go on to allege the Stantons questioned Battelle's official account of the nature and extent of the contamination, including the on-going public representation that no contamination from the November 8, 2011 release occurred beyond the ZPPR facility. (Dkt. 1 at 2 and ¶ 4.3.10, 4.3.11.) The Complaint alleges that Battelle engaged in a pattern of delay, obfuscation, and misrepresentation about the nature and extent of the contamination. (Dkt. 1 at ¶¶ 4.3.4, 4.3.6, 4.3.11.)

Having reviewed the language of the Complaint itself, the Court finds that the allegations contained therein fail to state a plausible claim for intentional infliction of emotional distress. The above cited allegations make only general conclusory allegations. Moreover, no where in the Complaint are there allegations that Battelle's conduct was extreme or outrageous. For these reasons, the Court concludes that the Complaint fails to state a plausible claim for intentional infliction of emotional distress and the Motion to Dismiss is granted.

3.  **Leave to Amend**

Mrs. Stanton has requested leave to amend the Complaint in the event the Court grants the Motion to Dismiss this claim. Federal Rule of Civil Procedure 15(a) provides that, once a responsive pleading has been served, a party may amend its pleading "only with the

**MEMORANDUM DECISION AND ORDER - 17**

opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit Court of Appeals recognizes that "the underlying purpose of Rule 15 [is] to facilitate [a] decision on the merits, rather than on the pleadings or technicalities," and, therefore, "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Chudacoff v. University Med. Cent. of Southern Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011) (quoting *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981)).

The decision whether to grant or deny a motion to amend pursuant to Rule 15(a) rests in the sole discretion of the trial court. The four factors that are commonly used to determine the propriety of a motion for leave to amend are: 1) undue delay, bad faith or dilatory motive on the part of the movant; 2) repeated failure to cure deficiencies by amendments previously allowed; 3) undue prejudice to the opposing party by virtue of allowance of the amendment; and 4) futility of amendment. *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 985 n. 5 (9th Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

However, "[t]hese factors . . . are not of equal weight in that delay, by itself, is insufficient to justify denial of leave to amend." *Webb*, 655 F.2d at 979 ("The mere fact that an amendment is offered late in the case is . . . not enough to bar it."); *Bowles v. Beade*, 198 F.3d 752, 758 (9th Cir. 1999). "Only where prejudice is shown or the movant acts in bad faith are courts protecting the judicial system or other litigants when they deny leave to amend a pleading." *Webb*, 655 F.2d at 980 (citation omitted). The Ninth Circuit has held that although all these factors are relevant to consider when ruling on a motion for leave to

**MEMORANDUM DECISION AND ORDER - 18**

amend, the "crucial factor is the resulting prejudice to the opposing party." *Howey v. United States*, 481 F.2d 1187, 1189 (9th Cir. 1973). Indeed, prejudice is the touchstone of the inquiry under Rule 15(a). *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Ultimately, "[u]nless undue prejudice to the opposing party will result, a trial judge should ordinarily permit a party to amend its complaint." *Howey*, 481 F.2d at 1190.

The Court finds leave to amend should be granted in this case. It is early in the case and there is not evidence of any bad faith nor does it appear that allowing an amendment will unduly delay this litigation. Moreover, the Court cannot say at this time that it would be futile to amend the claims based on the record as it currently stands.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Motion to Dismiss (Dkt. 6) is **GRANTED**

IT IS FURTHER ORDERED that Plaintiff is granted leave to file an amended complaint in this action, as stated herein, on or before **January 30, 2015**.

DATED: **January 6, 2015**

Honorable Edward J. Lodge
U. S. District Judge