David J. Whedbee, WSBA # 35977
**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel: 206.622.1604
Fax: 206.343.3961

Lowell N. Hawkes, ISB #1852
Ryan S. Lewis, ISB #6775
LOWELL N. HAWKES, CHARTERED
1322 East Center Street
Pocatello, ID 83201
Tel: 208-235-1600
Fax: 208-235-4200
Email: lnhchartered@yahoo.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JODI STANTON,<br><br>                Plaintiff,<br><br>      v.<br><br>BATTELLE ENERGY ALLIANCE, LLC,<br>organized in Delaware<br><br>                Defendant. | No. 4:14-cv-00231-EJL-CWD<br><br>AMENDED COMPLAINT FOR DAMAGES |

Comes now Plaintiff Jodi Stanton and allege as follows:

### I. NATURE OF THE ACTION

Defendant Battelle Energy Alliance, LLC ("Battelle" or "BEA"), a Delaware corporation, operates the Idaho National Laboratory (INL), in Idaho Falls, Idaho, under a contract with the U.S. Department of Energy (DOE). On November 8, 2011, workers at the INL's Materials and Fuels Complex (MFC) Zero Power Physics Reactor (ZPPR) Facility, were packaging plutonium (Pu) reactor fuel plates. On instruction by INL supervisors and managers, one of the workers,

AMENDED COMPLAINT FOR DAMAGES - 1

Ralph Stanton, opened two fuel storage containers that had unusual labels indicating potential abnormalities with the fuel plates located inside. When he did, an uncontrolled release of radioactive contaminants occurred, resulting in the contamination of 16 workers and the facility, including Mr. Stanton [hereinafter "the ZPPR exposure incident."]

Defendant eventually transported Mr. Stanton and other contaminated workers to its Occupational Medical Program (OMP) on the INL site and later that night discharged the workers from OMP. Defendant discharged Ralph Stanton from its medical facility and released him to leave the INL site and go home without properly and adequately decontaminating him and without conducting the radiological surveys necessary to detect and measure any remaining plutonium, americium, and other external radioactive contaminants on Mr. Stanton's hair, skin, or clothes.

Since the ZPPR exposure incident, the Stantons, including Plaintiff Jodi Stanton, have questioned Defendant's official account of the nature and extent of the contamination, the nature and extent of Defendant's decontamination of the exposed workers, and Defendant's ongoing public representation that no contamination from the ZPPR exposure incident was tracked off the INL facility by exposed workers who were not properly and adequately decontaminated and surveyed prior to their discharge home. In response, Defendant has engaged in a pattern of delay, obfuscation, and misrepresentation about the nature and extent of the contamination, the decontamination of the exposed workers, and the pre-release radiological surveying of the exposed workers. Defendant has also negligently failed to disclose or intentionally withheld important medical and radiological information from Plaintiff despite its special relationship with Plaintiff as Plaintiff's medical services provider. Defendant has done so despite the Stanton's discovery and notice to BEA that radioactive contamination for the ZPPR exposure incident was tracked off the INL site and contaminated the Stanton family home.

Following the ZPPR exposure incident, Plaintiff suffered severe mental and emotional distress that caused her to suffer severe migraines, nausea, stomach aches, sleeplessness, rashes, and other physical manifestations of harm. Defendant knew Plaintiff was vulnerable to

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10784.1 ia308002

emotional distress and stress-related physical conditions, because Defendant provided medical and other services to Plaintiff before and during her exposure.

Despite the duties Defendant owed Plaintiff as her medical service provider, Defendant's knowledge of her vulnerability to emotional distress and stress-related physical conditions, Defendant's knowledge of the emotional distress that Plaintiff was suffering as a result of the ZPPR exposure incident, the contamination of the Stanton family home, and her exposure to plutonium and americium, Defendant engaged in a series of acts that withheld, dissembled, and misrepresented the extent of contamination and the nature of the risk, instead of providing forthright and correct medical and radiological information. As a result of Defendant's continuing malfeasance and nonfeasance, Plaintiff has suffered ongoing extreme mental and emotional distress that has caused severe migraines, sleeplessness, rashes, and other physical manifestations of harm.

## II. PARTIES

2.1 Plaintiff Jodi Stanton is a citizen of Idaho and a resident of the District of Idaho.

2.2 Defendant Battelle Energy Alliance, LLC, is a company organized in Delaware that operates the Idaho National Laboratory in Idaho Falls, Idaho.

## III. JURISDICTION AND VENUE

3.1 The Court has diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff is a citizen of Idaho, and Defendant is a citizen of Delaware. Plaintiff's damages exceed the $75,000 amount-in-controversy requirement.

3.2 Venue is appropriate in the District of Idaho because the events complained of occurred in this District. 28 U.S.C. § 1391.

## IV. FACTS

4.1 *<u>The November 8, 2011 Uncontrolled Release of Radioactive Contaminants at the ZPPR Facility.</u>*

4.1.1 Plaintiff Jodi Stanton is the spouse of Ralph Stanton, who was working as a nuclear operator at the Idaho National Laboratory (INL) at all material times. Mr. Stanton was employed by Battelle Energy Alliance, LLC ("Battelle" or "BEA"), which is the current day-to-

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10784.1 ia308002

day operator of the INL facility, including the Materials and Fuels Complex (MFC) and the Zero Power Physics Reactor (ZPPR) Facility. In 2005, the DOE transferred to Battelle the management and operation of these facilities.

4.1.2 The ZPPR Facility is located within the MFC. It has a Vault for nuclear material, equipment and facilities for handling surveillance and inspection, and a Workroom for packaging and processing when nuclear material is received or shipped.

4.1.3 On November 8, 2011, INL workers (including Ralph Stanton) discovered several "clamshell" containers with plutonium (Pu) reactor fuel plates at the MFC/ZPPR facility. As later described by the DOE, two of the "containers had atypical labels indicating potential abnormalities with the fuel plates located inside." Specifically, the labels read: "CAUTION: RADIOACTIVE MATERIAL" and that Clamshell 47 contained: "1-Plate Dented/1-Plate C $\leq 10$ d/m/plate $\alpha$ & is wrapped in plastic."

4.1.4 The INL nuclear operators consulted the Shift Supervisor, who in turn consulted with the Nuclear Facility Manager. The supervisors instructed the workers that the packaging operation should proceed. INL operators took four of the "clam shell" containers into the ZPPR Workroom and discovered one of the Pu fuel plates wrapped in plastic and tape. The workers attempted to remove the plastic wrapping material by cutting into it and precipitated an uncontrolled release of plutonium, resulting in the contamination of 16 workers and the facility, including Brian Simmons and Ralph Stanton.

4.1.5 At the time of the release, BEA Health Physicist Steve Braase attempted to get a radiation reading of Mr. Stanton using a hand-held alpha-radiation detector. He later reported the detector usually must be placed within a quarter inch from the subject to detect radiation, but in this case, "as far as three inches from the swab, the needle bounced into the red." Mr. Braase stopped work and measured Mr. Stanton for alpha radiation. Mr. Braase later reported that he was "shocked" to find alpha radiation on Mr. Stanton's shoulder.

4.1.6 Mr. Braase had Mr. Stanton remove his gauntlets and gloves, sealing his hands inside a plastic bag.

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

4.1.7   Meanwhile, an air monitor alarm sounded, cueing the operators to evacuate because of airborne contamination.

4.1.8   Mr. Stanton, Mr. Braase, and others were taken through a series of security stations and surveyed for radiological contamination.  INL measured Mr. Stanton's radiation exposure by taking nasal swabs, a lung count, and urine and fecal bioassay samples.  The decontamination team also found contamination in Mr. Braase's hair and "all over his face."

4.1.9   Contrary to standard decontamination procedures and practices, BEA did not have Mr. Stanton shower or completely wipe down before performing his initial lung count, or indeed at any time before he was discharged from BEA's medical facility and allowed to leave the INL site and go home.  Mr. Stanton wiped down his face with a wet towel, but BEA health physicists or other personnel failed to wipe down his hair or the rest of his body.  BEA health physicists or other personnel also failed to subject Mr. Stanton to a full body survey using a handheld alpha detector or walk-through whole body personnel contamination monitor after the exposure and before being discharged from the medical facility and released to go home.

4.1.10  The initial lung count taken by BEA on November 8, 2011 indicated considerable exposure to alpha radiation particulate, including a count of amerium-241 "above the decision level."  Mr. Stanton, and the Plaintiff, worried the high americium count stems from the fact that he inhaled radioactive contaminants at the moment of the plutonium release.  BEA decided not to use this reading, discounting the results allegedly because BEA believed that the high count stemmed from the fact that Mr. Stanton had not been showered prior to the lung count.

4.1.11  As to the urine and fecal samples of the most contaminated workers, they were sent to a lab, but according to a later DOE Report, BEA health physicists miscommunicated with the lab.  As a result, these samples were thrown out, samples Mr. Stanton and Plaintiff believe would have shown the highest doses of plutonium and americium.

4.2   ***DOE'S Accident Investigation Report.***

4.2.1   On January 4, 2012, the DOE's Office of Nuclear Energy issued an "Accident Investigative Report" ("Report") of the November 8, 2011 plutonium release.  It concluded that

AMENDED COMPLAINT FOR DAMAGES - 5

10784.1 ia308002

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

the release was "preventable" and determined that Battelle bore responsibility for various root causes of the contamination.

4.2.2 The "local root causes" included: (1) "BEA did not accurately analyze the Pu hazard in the safety basis and establish commensurate controls"; and (2) "The management system lacked requirements intended to influence the decision making of the NFM and SS, resulting in a single-point decision to cut the wrapping."

4.2.3 The "systemic root causes" included: (1) "DOE-ID accepted the risk of known safety basis deficiencies and allowed continued operation of the ZPPR Facility within the framework of a multi-year safety basis upgrade plan without putting effective interim controls in place"; and (2) "BEA continued operation of the ZPPR Facility with known safety basis deficiencies and without adequately analyzing the hazard to the worker or establishing effective work control processes."

4.2.4 The Report also found, as a contributing cause, that on May 30, 2003, before the DOE subcontracted the operation and management of the MFC to Battelle, an Associate Laboratory Director had issued a report entitled "Fissile Material Control Noncompliances of ZPPR." This report noted that one root cause of the "noncompliances" pertained to "management deficiencies," including more specifically "concerns with the lack of Pu-specific training and surveillance." The Report further found that when, by January 14, 2005, the MFC was transitioned from DOE-ID to Battelle, the Associate Laboratory Director made several recommendations relevant to the November 8, 2011 contamination. These included:

(1) Battelle and DOE failed to improve a safety basis upgrade plan, which resulted in misjudging both the likelihood and the potential severity of the type of radioactive contamination that occurred on November 8, 2011.

(2) Battelle miscalculated the potential radioactive dose ZPPR workers could receive in the event of such a release of radioactivity.

(3) In DOE reports entitled *Transmittal of the INL Transition Report on Nuclear Facilities Safety Bases* (1/11/2005), and *Independent Safety Review Committee (IRSC) for the Materials and Fuels Complex (MFC)*, and a white paper (1/26/2009)

AMENDED COMPLAINT FOR DAMAGES - 6

10784.1 ia308002

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

and report (6/23/2011) by the IRSC Chairman, the DOE expressed historical and on-going concerns about the storage of plutonium fuel plates at the ZPPR facility.

4.2.5 The DOE Report concluded: "The treatment of a failed Pu fuel plate hazard and potential accident in BEA's safety basis is of supreme relevance to this accident investigation, because it ultimately resulted in the lack of additional controls that could have prevented the accident on November 8, 2011."

*4.2.6* The DOE Report criticized BEA for the inadequate continuous air monitoring system at ZPPR, failing to train its employees to respond in the event of an uncontrolled airborne contamination, and for the deficient emergency response to the November 8, 2011 itself, including the insufficient hot water supply needed to shower the contaminated workers.

4.3 *The Stanton Family Home*

4.3.1 Plaintiff and her husband, Ralph Stanton, purchased a home located at 850 Rainier Street in Idaho Falls, Idaho (hereinafter "the Stanton family home") in July 2008.

4.3.2 When they purchased their home and at all times between the purchase date and November 8, 2011, Plaintiff and her husband believed that their home was free of any plutonium contamination and at no time prior to November 8, 2011, were they advised to the contrary by Battelle, the seller of the home, or anyone else.

4.3.3 Plaintiff and her husband resided in the Stanton family home with their two sons and one daughter until March 2009, when their oldest son joined the United States Air Force and moved out of the family home.

4.3.4 On November 8, 2011, Plaintiff was living in the Stanton family home with her husband, one of her two sons, and her daughter.

4.3.5 At all times relevant, Plaintiff has resided in the Stanton family home with her husband, Ralph Stanton.

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10784.1 ia308002

### 4.4 *Plaintiff's Employment at the INL Site*

4.4.1   Between August 13, 2007 and September 30, 2014, Plaintiff worked as a visual examination operator for International Engineering Services (IES) at the Radioactive Waste Management Complex (RWMC) at the INL site in southeast Idaho.

4.4.2   IES conducts nuclear waste characterization and certification at INL in connection with INL's Central Characterization Program (INL/CCP.)

4.4.3   The Central Characterization Program (CCP) characterizes, certifies, and transports Transuranic (TRU) waste from various U.S. Department of Energy (DOE) sites, including INL, to the Waste Isolation Pilot Plant (WIPP) in New Mexico.

4.4.4   As an employee of IES, Plaintiff was entitled to receive and did receive medical and other services at the medical facility operated at INL by Battelle.

### 4.5 *Battelle's Operation Of The Occupational Medical Program And Facility at INL*

4.5.1   Battelle operates the Occupational Medical Program (OMP) at INL and provides comprehensive medical and other services to BEA, IES, and other employees working at INL.

4.5.2   Battelle employs medical staff, including physicians, nurses and technicians, to provide these services, including pre-placement physicals, periodic physicals, injury and illness treatment, Employee Assistance Programs, and Health Promotion programs.

4.5.3   Battelle personnel provide these medical services at medical facilities, including clinics and dispensaries, operated by Battelle at INL's Central Facilities Area (CFA) and at other locations.

4.5.4   Battelle's Occupational Medical Program and BEA's Safety and Health Program (SHP) are integrated to provide an interface and coordination between the provision of medical services and the injury/illness investigation process.

4.5.5   The integration includes frequent meetings of Battelle's OMP and SHP employees to discuss safety, industrial hygiene, radiological, environmental, and medical and other matters.

AMENDED COMPLAINT FOR DAMAGES - 8

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10784.1 ia308002

### 4.6 *Battelle's Special Relationship With Plaintiff*

4.6.1   By operating a medical facility at INL that provided medical services to BEA and IES employees, including Plaintiff, Battelle created a special relationship with Plaintiff and assumed duties to her as her medical service provider.

4.6.2   Battelle had a contractual relationship to provide medical services to Plaintiff or voluntarily undertook to provide medical services to her and did provide medical services to her, including medical services related to her emotional distress after November 8, 2011.

4.6.3   By providing medical and health related services to Plaintiff, BEA assumed certain duties to Plaintiff, including the duty to disclose to her important medical and radiological information, the duty to not deliberately withhold important medical and radiological information from her, and the duty to not deliberately mislead her by intentionally withholding important medical and radiological information from her regarding her radiological exposure, dose, and the contamination of her home.

4.6.4   During all times that BEA negligently failed to disclose to or deliberately withheld from Plaintiff important medical and radiological information about her contamination and the contamination of the Stanton family home, BEA medical and other personnel knew that Plaintiff was vulnerable to emotional stress, and it was foreseeable that failing to disclose the information or deliberately withholding it would cause her to suffer emotional distress accompanied by physical manifestations, such as headaches and stomach aches.

4.6.5   By providing medical and health related services to Plaintiff, there was a closeness in connection between BEA's deliberate withholding of the aforementioned important medical and radiological information and the severe emotional distress Plaintiff suffered on account of Defendant's negligent and/or intentional conduct.

### 4.7 *Plaintiff's Pre-November 8, 2011 Vulnerability To Emotional Distress*

4.7.1   Prior to being hired by IES in August 13, 2007, and between August 13, 2007 and November 8, 2011, Plaintiff periodically suffered intermittent stress-related physical conditions,

AMENDED COMPLAINT FOR DAMAGES - 9

10784.1 ia308002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

including migraine headaches and stomach aches, received medical treatment for these physical conditions, and periodically missed work because of them.

4.7.2   Between August 13, 2007 and November 8, 2011, Plaintiff received services from BEA personnel at CFA, including services provided by OMP personnel.

4.7.3   Between August 13, 2007 and November 8, 2011, Plaintiff communicated with OMP personnel regarding her intermittent stress-related physical conditions, including migraine headaches and stomach aches.

4.7.4   Between February and August 2011, Plaintiff obtained medical treatment at a non-BEA medical clinic in Idaho Falls for stress-related physical conditions, including migraine headaches, she suffered after learning from her husband and other BEA employees that BEA was violating recognized nuclear safety practices and retaliating against her husband for complaining about certain unsafe practices and exercising his stop work responsibilities. Prior to November 8, 2011, BEA medical and other OMP personnel knew or should have known Plaintiff's pre-existing medical history, that she was vulnerable to emotional stress, and that emotional stress sometimes caused Plaintiff to suffer stress-related physical conditions, including migraine headaches and stomach aches.

4.8   *__Battelle's November 8, 2011 Knowledge Of Plainitff's Emotional Distress And Vulnerability To Emotional Distress__*

4.8.1   On November 8, 2011, Plaintiff rushed to the BEA medical facility at CFA (hereinafter "the medical facility") after learning that her husband had been contaminated as a result of the ZPPR exposure incident.

4.8.2   Plaintiff waited at the medical facility for several hours, waiting for her husband to undergo chelation therapy, decontamination, and pre-discharge radiological surveys.

4.8.3   While waiting for her husband at the medical facility on November 8, 2011, Plaintiff was obviously extremely emotionally upset, openly and obviously crying uncontrollably for periods of time, and sick to her stomach.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10784.1 ia308002

4.8.4   At the medical facility on November 8, 2011, Plaintiff spoke with BEA medical and other personnel about her concerns and emotional distress.

4.8.5   One or more of the BEA personnel at the medical facility saw Plaintiff in this open and obvious state of emotional distress.  One or more of the BEA personnel at the medical facility spoke with Plaintiff regarding her emotional distress and knew that Plaintiff was vulnerable to emotional distress and was suffering emotional distress that night.

4.9   ***Battelle's Continuing Knowledge Of Plaintiff's Emotional Distress And Vulnerability To Emotional Distress After November 8, 2011***

4.9.1   In January 2012, Plaintiff was transported by ambulance from her work site at RWMC to Battelle's medical facility at CFA, due to the stress-related physical and emotional conditions caused by BEA's inaccurate and untruthful statements to DOE and the press about her husband's exposure and decontamination on November 8, 2011.

4.9.2   In April 2012, Plaintiff obtained psychological counseling and medical treatment at non-BEA medical facilities in Idaho Falls, including Mountain View Hospital, for her post-November 8, 2011, stress-related physical conditions, including migraine headaches.

4.9.3   Between April 2012 and December 2013, Plaintiff discussed with BEA personnel on several occasions the emotional distress she was suffering because of BEA's refusal to disclose information regarding the contamination of her family home, her related contamination, and her husband's contamination and inadequate decontamination.

4.9.4   Between April 2012 and December 2013, Plaintiff obtained medical services from BEA personnel for the severe migraine headaches and other stress-related physical conditions she was suffering because of BEA's refusal to disclose information regarding the contamination of her family home, her related contamination, and her husband's contamination and inadequate decontamination.

4.9.5   Between April 2012 and December 2013, BEA medical and other OMP personnel knew or should have known Plaintiff's pre-existing medical history, that she was vulnerable to

AMENDED COMPLAINT FOR DAMAGES - 11

10784.1 ia308002

**MACDONALD HOAGUE & BAYLESS**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

emotional stress, and that emotional stress sometimes caused Plaintiff to suffer stress-related physical conditions, including migraine headaches and stomach aches.

4.9.6   On a continuing basis since November 8, 2011, BEA negligently failed to disclose or deliberately withheld from Plaintiff important medical and radiological information about her contamination, the extent of contamination suffered by her or Mr. Stanton, and the contamination of the Stanton family home.

4.9.7   On a continuing basis since November 8, 2011, BEA has misrepresented to Plaintiff and the public: (1) the extent of Ralph Stanton's exposure as a result of the ZPPR exposure incident; (2) BEA's failure to decontaminate Mr. Stanton properly and adequately; (3) BEA's failure to conduct the proper radiological surveys before discharging him home from its medical facility; (4) the nature and extent of the radioactive contamination of the Stanton family home; and (5) Plaintiff's exposure to plutonium radiation as a result of the ZPPR exposure incident.

4.9.8   Battelle, including medical personnel at OMP responsible for Plaintiff's medical care, negligently caused Plaintiff to suffer emotional distress by negligently failing to disclose to, or deliberately withholding from Plaintiff important information about her own or her husband's radiological contamination, exposure, and dose, including information regarding contamination of the Stanton family home from plutonium and americium tracked home by Ralph Stanton after the November 8, 2011 ZPPR exposure incident.

4.9.9   When Battelle calculated Mr. Stanton's dose, it refused to consider his initial lung count, contending the unusually high reading must have been influenced by external contamination on Mr. Stanton's skin or hair.

4.9.10  When the Stantons later reported to the Department of Energy about Battelle's refusal to test the Stanton family home for radioactivity by a mutually agreeable independent lab, Battelle insisted that Mr. Stanton's contamination was internal, not external. Battelle falsely claimed that Mr. Stanton could not have contaminated the Stanton family home because BEA had conducted radiological surveying before he was discharged home and the testing showed

AMENDED COMPLAINT FOR DAMAGES - 12

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10784.1 ia308002

that Mr. Stanton had no external contamination. Battelle made these false statements knowing that Mr. Stanton had external contamination that was not removed before or after his initial lung count and that BEA had never taken a full body radiological survey to detect for external contamination before discharging Mr. Stanton home from BEA's medical facility.

4.9.11 Despite its duty as Plaintiff's medical providers to truthfully advise Plaintiff, its knowledge of Plaintiff's vulnerability to emotional distress, its knowledge of Plaintiff's actual post-ZPPR incident emotional distress, and its knowledge of the truth about Mr. Stanton's exposure, external contamination, failure to be properly and adequately decontaminated, and discharge home without receiving proper and adequate pre-release radiological testing, Battelle negligently failed to disclose or deliberately withheld important medical and radiological information from Plaintiff. Battelle knew or should have known that negligently failing to disclose or deliberately withholding this information would cause or exacerbate Plaintiff's emotional distress and foreseeably cause her to suffer physical manifestations of harm.

### 4.9.12 *Plaintiff's Exposure To Plutonium And Other Radioactive ZPPR Contaminants*

4.9.12.1 Plaintiff had direct physical contact with her husband after he was discharged from BEA's medical facility on November 8, 2011, including direct physical contact that night and on nearly a daily basis thereafter. When Mr. Stanton arrived home the night of the exposure incident, Plaintiff greeted him at the door and hugged him. They held hands, slept together in the same bed, and embraced that night. As a consequence, Plaintiff was exposed to contamination tracked by Mr. Stanton from the BEA premises.

4.9.12.2 In the weeks following Ralph Stanton's discharge from BEA's medical facility on November 8, 2011, Plaintiff continued to reside with her husband in their family home, sleep with him in their bed, and share pillows, bed linens, towels, and other personal items, as they had before the November 8, 2011 incident, because BEA did not disclose to Plaintiff or her husband the true nature and extent of Ralph Stanton's contamination, BEA's failure to decontaminate him properly and adequately, and the consequences of BEA's failure to conduct proper and adequate pre-discharge radiological surveys of him prior to discharging him

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

home from the medical facility. As a consequence, Plaintiff was exposed to contamination tracked by Mr. Stanton from the BEA premises.

4.9.12.3 Plaintiff and her husband eventually retained a non-BEA radiation expert, Marco Kaltofen, MS, PE, to test samples to determine whether plutonium and americium contamination were present.

4.9.12.4 In a letter dated June 11, 2012, Jacquelyn Collins of Pace Analytical Services, Inc., wrote to Marco Kaltofen to inform him of radioactive contamination found in test samples submitted to the lab by Mr. Kaltofen.

4.9.12.5 In the summer of 2012, Marco Kaltofen advised Plaintiff and her husband that there was evidence that the Stanton family home was contaminated with plutonium from the ZPPR facility, probably as a result of the ZPPR exposure incident and BEA's failure to decontaminate Mr. Stanton properly and adequately, and BEA's failure to conduct proper and adequate radiological surveys of Mr. Stanton prior to discharging him home from the medical facility.

4.9.12.6 Plaintiff was subsequently advised by the non-BEA expert that the plutonium contamination in the Stanton family home was not naturally occurring radioactive material (NORM) or fallout from weapons testing, as BEA personnel had told Plaintiff, her husband, and others.

4.10 ***Plaintiff's Reasonable Emotional Distress From Fear Of Her Plutonium Exposure***

4.10.1 Plaintiff has a family history of vulnerability to cancer and, prior to November 8, 2011, underwent a partial thyroidectomy to remove a cancerous or pre-cancerous tumor.

4.10.2 Plaintiff's fear resulting from her exposure to plutonium, an ultra-hazardous carcinogen, was and is reasonable, especially in light of her family history and partial thyroidectomy.

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10784.1 ia308002

4.10.3  Plaintiff's emotional reaction to her plutonium exposure and to BEA's failing to disclose or deliberately withholding and misrepresenting important medical and radiological information from her regarding her exposure to plutonium was and is reasonable.

4.10.4  Plaintiff has suffered genuine mental and physical injuries as a result of the reasonable emotional distress caused by Battelle.

4.10.5  As a result of the emotional distress proximately caused by BEA's negligent misfeasance, Plaintiff suffered severe migraines, sleeplessness, rashes, and other physical manifestations of harm.

4.10.6  As a result of the emotional distress proximately caused by BEA's negligent nonfeasance, Plaintiff has suffered severe migraines, sleeplessness, rashes, and other physical manifestations of harm.

4.11  ***Battelle's Intentional Infliction of Emotional Distress***.

4.11.1  After the ZPPR radiation exposure incident on November 8, 2011 Battelle intentionally misrepresented to Plaintiff and the public: (1) the extent of Ralph Stanton's exposure as a result of the ZPPR exposure incident; (2) BEA's failure to decontaminate Mr. Stanton properly and adequately; (3) BEA's failure to conduct the proper radiological surveys before discharging him home from its medical facility; (4) the nature and extent of the radioactive contamination of the Stanton family home; and (5) Plaintiff's exposure to plutonium radiation as a result of the ZPPR exposure incident.

4.11.2  Battelle's intentional misrepresentations and deliberate delay in releasing facts to Plaintiff, Plaintiff's husband, other exposed workers, their families, and the public constituted extreme and outrageous conduct by a company subject to strict federal safety standards and entrusted with the management of a nuclear facility processing one of the most dangerous substances on earth, plutonium.

4.11.3  Battelle's misfeasance in deliberately withholding from Plaintiff important medical and radiological information about her radiological contamination, exposure, and dose, including information regarding contamination of the Stanton family home and about her

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

husband's radiological contamination, exposure, and dose, including information regarding plutonium and americium tracked home by Ralph Stanton or after November 8, 2011, was a proximate cause of Plaintiff's emotional distress and the repeated exacerbations suffered by Plaintiff since November 8, 2011.

4.11.4 Battelle's intentional failure to disclose to Plaintiff important medical and radiological information about her radiological contamination, exposure, and dose, including information regarding contamination of the Stanton family home and about her husband's radiological contamination, exposure, and dose, including information regarding contamination of the Stanton family home on or after November 8, 2011, was a proximate cause of Plaintiff's emotional distress and the repeated exacerbations suffered by Plaintiff since November 8, 2011.

4.12 ***Battelle's Deliberate Delay In Releasing Facts and Intentional Misrepresentations About the Nature and Extent of the November 8, 2011 ZPPR Exposure Incident***

4.12.1 On March 27, 2012, Mr. Stanton requested his medical and exposure records. BEA did not provide the records, claiming that the dosage levels were unknown.

4.12.2 On June 18, 2012, Mr. Stanton and Mr. Simmons, through counsel, repeated the request for all medical and dosage records to BEA General Counsel, Linda Guinn-Montgomery. Mr. Stanton's insistence on an accurate dose reading stemmed from BEA's attempt to remove the radiation restriction from Mr. Stanton amid BEA's continued claim that the exact dosages were unknown, despite other credible claims that the exposure was "horrendous."

4.12.3 In this same correspondence, Mr. Stanton's counsel conveyed to Ms. Guinn-Montgomery that Mr. Stanton's then-supervisor, Eric Papaioannou, was pressuring Mr. Stanton to return to work on an assignment that entailed exposure to higher levels of radiation, though BEA still had not disclosed the extent of November 8, 2011 radiation contamination. Counsel wrote that BEA, through Mr. Papaioannou, "characterized [Stanton's] internal plutonium exposures as a mental hangup rather than biological fact of continuing injury. He also told them an internal dose was no different than an external dose and that their risk of cancer was less than

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

average despite their November 8th exposures. That raises the concern as to whether Mr. Papaioannou is intentionally providing false information on his own or at the direction of others or is just not sufficiently knowledgeable or trained as to Plutonium characteristics."

4.12.4 On July 12, 2012, Mr. Stanton's counsel emailed Ms. Montgomery, stating that five weeks had passed since the contact with Philip Breidenbach to follow up on the original March 27, 2012 request for medical and dosage records. Stanton's counsel wrote: "The ensuing delay is of the type that experience has shown me to be a result of intentional frustration and delay as well as alteration of records. Certainly some portion of documents could have been furnished to our office immediately and the personnel file documents could have been copied and sent out in a day or two."

4.12.5 On August 18, 2012, INL Director John Grossenbacher wrote a guest column published in the *Post Register*, a newspaper in Idaho Falls. In the article, Mr. Grossenbacher falsely wrote: "All employees were checked for external contamination before going home." Mr. Grossenbach's comments were misleading because Battelle knew that Ralph Stanton was not properly or adequately decontaminated and was not properly or adequately surveyed prior to his discharge home from BEA's medical facility. BEA intentionally withheld the full and accurate account to avoid public criticism and potential discipline from regulatory agencies.

4.12.6 On September 24, 2012, BEA finally released the dose reports for Simmons and Stanton. But the dose reports lacked credibility because, among other reasons: (1) BEA did not incorporate Mr. Stanton's initial lung count when calculating his dose, allegedly because the high radioactivity reading may have been influenced by external contamination on Mr. Stanton's body or in his hair; and (2) BEA claimed that it couldn't use some of Mr. Stanton's samples because the lab that tested Mr. Stanton's urine and fecal samples disposed of the initial samples, allegedly due to BEA's miscommunications with them.

4.12.7 In 2012 and 2013 BEA repeatedly insisted that no exposed employee tracked contamination for the INL site after the ZPPR exposure incident and insisted that the Stanton's family home was not contaminated, but repeatedly refused the Stanton's request that Battelle

AMENDED COMPLAINT FOR DAMAGES - 17

retain a mutually agreeable qualified independent laboratory to test the Stanton home for plutonium and americium contamination.

4.12.8 In 2012 and 2013, Battelle repeatedly falsely accused Ralph Stanton of misbehavior and unsafe behavior at work in retaliation for his and Plaintiff's efforts to obtain full and accurate disclosure from Battelle regarding : (1) the extent of his radiological exposure as a result of the ZPPR incident; (2) BEA's failure to decontaminate Mr. Stanton properly and adequately; (3) BEA's failure to conduct the proper radiological surveys before discharging him home from its medical facility; (4) the nature and extent of the radioactive contamination of the Stanton family home; and (5) Plaintiff's exposure to plutonium radiation as a result of the ZPPR exposure incident.

4.12.9 In October 2012, Battelle refused to permit Mr. Stanton to take home from work an alpha detector to test the Stanton family home for radioactive contamination.

4.12.10 In December 2013, Battelle falsely accused Mr. Stanton of sleeping on the job and terminated his employment with BEA.

4.12.11 In a newspaper article published by the Boise Weekly on May 24, 2014, Mr. Grossenbacher was quoted as saying that the exposed workers "certainly didn't track any contamination home." In making the categorical statement, he echoed his health and environmental safety director, Sharon Dossett, who told the reporter, "We have no evidence that there was any release of contamination from this event, ever." Ms. Dossett also told the reporter, "We cleared everybody the night of the event. . . . They did not go home contaminated." These BEA employees made these public statements despite BEA's knowledge that Mr. Stanton and other exposed employees had not undergone three separate surveys with handheld alpha detector and had not been processed through a whole body personnel contamination monitor, as BEA management earlier reported.

4.12.12 Battelle personnel made these misleading and false statements about the nature and extent of Mr. Stanton's exposure, dose, decontamination, and pre-discharge radiological

AMENDED COMPLAINT FOR DAMAGES - 18

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604 Fax 206.343.3961

10784.1 ia308002

testing, despite Battelle's written "Values and Expectations" policy that required employees to "tell the truth, all the time," and "never undermine others for personal gain."

4.12.13 Battelle's intentional misrepresentations to Plaintiff, her husband, federal agencies and the public in order to avoid responsibility for its safety violations and contamination of workers, worker's families, worker's homes, and the environment constituted extreme and outrageous conduct by a company entrusted with the management of a nuclear facility processing one of the most dangerous substances on earth, plutonium.

## V.  CAUSE OF ACTION

5.1  Incorporating the foregoing allegations herein, Defendant negligently or intentionally inflicted emotional distress on Plaintiff.

## VI.  CLAIMS FOR RELIEF

WHEREFORE, the Plaintiff requests relief as follows:

6.1  Compensatory damages;

6.2  Such other relief as may be just and equitable.

DATED this 30th day of January, 2015.

MacDONALD HOAGUE & BAYLESS

By:

*s David J. Whedbee*
David J. Whedbee, WSBA # 35977
davidw@mhb.com

_____
Lowell N. Hawkes, ISB# 1862
lnhchartered@yahoo.com

Attorneys for Plaintiff

AMENDED COMPLAINT FOR DAMAGES - 19

10784.1 ia308002

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of January, 2015, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

<u>Attorney for Defendant:</u>

Eric M. Barzee
eric.barzee@inl.gov

<u>Attorneys for Plaintiff:</u>

| | |
|---|---|
| Lowell N. Hawkes<br>lnhchartered @yahoo.com | David J. Whedbee<br>davidw@mhb.com |
| Ryan S. Lewis<br>lnhchartered@yahoo.com | |

/s/*Windy A. Walker*
Legal Assistant

AMENDED COMPLAINT FOR DAMAGES - 20

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

10784.1 ia308002